UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

**BAMC DEVELOPMENT HOLDING, LLC**

   Debtor.                                             Case No: 8:22-BK-01487-CPM

---

**BAMC DEVELOPMENT HOLDING, LLC,**

   Appellant,

v.                                                                            Case No: 8:23-cv-00292-MSS

**WILMINGTON SAVINGS FUND SOCIETY, FSB, et al,**

   Appellee.

---

**ORDER**

    **THIS CAUSE** comes before the Court for consideration of Appellant BAMC Development Holding, LLC's appeal of the bankruptcy court's Order Converting Case From Chapter 11 to Chapter 7 and Order Denying Debtor's Motion For Reconsideration. (Dkt. 1) Upon consideration of all relevant filings, the entire bankruptcy record, the Parties' briefs, and being otherwise fully advised, the Court **AFFIRMS** the bankruptcy court's rulings.

1

I. **BACKGROUND**

In this appeal, Appellant BAMC Development Holding, LLC ("Appellant") challenges the bankruptcy court's conversion of its Chapter 11 case to a Chapter 7 bankruptcy. (Dkt. 1) Appellant filed for Chapter 11 Bankruptcy on April 13, 2022. (Dkt. 3-5) Appellant's most valuable asset at the time it filed was real property located at 212 South Fremont Avenue, Tampa, Florida 33606 (the "Property"). (Dkt. 3-6) Other than the Property, the bankruptcy estate included a bank account containing about $14,564.00. (Dkt. 3-6) The Property is subject to a first-priority mortgage held by Wilmington Savings Fund Society, FSB ("Appellee"), (Dkt. 3-6; Dkt. 3-42), and a second-priority mortgage held by Robert Prescott ("Prescott"). (Dkt. 3-6 at 11; Dkt. 53 at 9–11) The Property is also subject to an option agreement between Appellant and Tampa Hyde Park Cafe Properties, LLC ("THPCP"), which is referred to as the Option Exercise and Chapter 11 Plan Sponsor Agreement (the "Option"). (Dkt. 3-6 at 25) Under the Option, THPCP is entitled to purchase the Property for $250,000.00. (Dkt. 3-46 at 6) THPCP is an affiliate entity of Appellant. (Dkt. 24 at 7, 9)

More than ten years ago, on June 30, 2013, Appellee filed a foreclosure action on the Property (the "Foreclosure Action"), which was then owned by Christopher Scott ("Scott"). (Dkt. 3-17) On August 21, 2018, the state court granted Appellee a final judgment of foreclosure in the amount of $206,887.32.[1] (Dkt. 3-18, Ex. C at 3) The state court reserved ruling on the amount of attorney's fees to which Appellee was

---

[1] The state court was the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida. The case number for the Foreclosure Action is 13-CA-009150.

2

entitled. (Id. at 4) The state court scheduled a sale of the Property for September 27, 2018. (Id. at 3)

On September 19, 2018, a quitclaim deed that transferred title to the Property from Grantor, Scott, to Grantees, Appellant and Scott, was recorded. (Dkt. 3-39) Appellant was then a debtor in a Chapter 11 bankruptcy, case number 8:18-bk-06643. (Dkt. 3-30; Dkt. 3-43, Ex. B at 5) Accordingly, the September 27 sale of the Property was canceled due to the automatic stay. (Dkt. 3-43, Ex. B at 5) Scott filed a notice of appeal of the Foreclosure Action on September 20, 2018. (Dkt. 3-43, Ex. B at 5)

The bankruptcy court dismissed Appellant's 2018 bankruptcy in January 2019 and the stay expired. (Dkt. 3-43, Ex. C at 3; Dkt. 3-31) A foreclosure sale was scheduled for November 14, 2019. (Dkt. 3-43, Ex. B at 4) This sale was rescheduled for December 26, 2019, and later canceled. (Id.)

Meanwhile, Scott's appeal of the foreclosure action proceeded, and the appellate court ultimately decided in Appellee's favor.[2] (Dkt. 3-30 at 1) The court issued its mandate on February 20, 2020, stating that all appellate proceedings had ended. (Id.)

Then, from April 2020 to April 2022, Appellee sought an amendment of the final foreclosure judgment in the state court to include attorney's fees and post-judgment advances and interest resulting from expenses incurred protecting its interest

---

[2] The appellate court was the Florida Second District Court of Appeal. The case number is 2D18-3817. The Court takes judicial notice of the state court record in the Foreclosure Action. (Dkt. 3-30, Ex. B)

3

in the Property pending Scott's appeal. (Dkt. 3-43, Ex. B) Several foreclosure sales were scheduled and canceled during this period. (Id.) The state court never amended the judgment as Appellee requested. (Id.)

On September 29, 2021, Scott transferred his interest in the Property to Appellant, BAMC Development Holding, LLC, via quitclaim deed. (Dkt. 3-40) Appellant became the sole owner of the Property.

On April 11, 2022, the Parties received a notice of hearing scheduled for May 2, 2022, in the Foreclosure Action regarding Appellee's motion to amend the final judgment of foreclosure to include post-judgment advances and interest. (Dkt. 3-43, Ex. B at 2) A foreclosure sale that had been scheduled for April 14 was canceled on April 12. (Id.) Appellant filed its petition for Chapter 11 bankruptcy on April 13, 2022. (Dkt. 3-5)

In the bankruptcy action, Appellee filed a motion for relief from stay on April 28, 2022, (Dkt. 3-17) which the bankruptcy court denied. (Dkt. 3-25) Appellee then filed a motion to dismiss the bankruptcy case as a bad faith filing. In the alternative, Appellee renewed the motion for relief from the stay. (Dkt. 3-29) The bankruptcy court granted Appellee relief from the stay to allow Appellee to seek an amendment of the foreclosure judgment in state court to include amounts that had arisen since the date of the judgment. (Dkt. 3-49 at 2) The bankruptcy court stated that it would decide the remaining portions of Appellee's motion on September 8, 2022. (Id. at 3) The bankruptcy court noted in its order, "Despite any pending bankruptcy plans and/or confirmation hearings, the Court retains full authority to dismiss this bankruptcy,

grant full stay relief, and grant any further or other relief in connection therewith." (Id.)

At the September 8, 2022, hearing, the bankruptcy court considered Appellant's Proposed Amended Plan of Reorganization (the "Plan"). (Dkt. 11) The Plan called for Appellee to receive one $10,000.00 payment within five days of the effective date of the Plan, with monthly payments of interest at a rate of 7.625%, in addition to tax and insurance payments. (Dkt. 3-53 at 10) The Plan stipulated that Appellee's claim was $300,000.00 to reflect the additional expenses Appellee sought to have included in the foreclosure judgment in state court. (Id.) If Appellant defaulted under the Plan, Appellee would be granted relief from the stay. (Id.) Additionally, THPCP agreed to waive its right to exercise the Option if the Plan was confirmed. (Id. at 10) The Plan stated that if Appellee did not confirm the Plan, THPCP would exercise the Option to purchase the Property for $250,000.00 and the Plan would only entitle Appellee to receive the difference between its stipulated claim, $300,000.00, and the purchase price under the Option. (Id.)

Under the Plan, Prescott would receive a right to 2.5% interest in any development Appellant "participates in with respect to the Property." (Dkt. 3-53 at 10) If Appellant failed to commence development within 36 months of the Plan's effective date, Appellant would pay Prescott his claim in full on the first day of the 37th month after the Plan's effective date, plus interest at 3.5%. (Id. at 10–11) The unsecured claims would be paid in full five days after the Plan's effective date. (Id. at 11)

After considering the Plan, the bankruptcy court ordered that the case be converted from a Chapter 11 to a Chapter 7 bankruptcy under 11 U.S.C. § 1112(b). (Dkt. 3-2) The bankruptcy court found that the petition was "an abuse of the bankruptcy process," and it found, therefore, that it had cause to convert the case under § 1112(b). (Dkt. 11 at 37) Appellant filed a motion for reconsideration, (Dkt. 3-64) which the bankruptcy court denied. (Dkt. 3-3) Appellant appeals the order converting the case to Chapter 7 and the order denying its motion for reconsideration. (Dkt. 1)

## II.     STANDARD OF REVIEW

In reviewing bankruptcy court judgments, a district court functions as an appellate court. 28 U.S.C. § 158(a); see also In re Coady, 588 F.3d 1312, 1315 (11th Cir. 2009). It reviews the bankruptcy court's legal conclusions *de novo* but must accept the bankruptcy court's factual findings unless they are clearly erroneous. In re Chira, 567 F.3d 1307, 1310–11 (11th Cir. 2009). "[A] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). The district court also reviews *de novo* the bankruptcy court's determinations as to the legal significance accorded to the facts. In re Sunshine-Jr. Stores, Inc., 198 B.R. 823, 825 (M.D. Fla. 1996). In hearing a bankruptcy appeal, the district court may reverse, affirm, or modify

only on issues actually presented to the trial judge. In re Gardner, 455 F. Supp. 327 (N.D. Ala. 1978).

## III. DISCUSSION

Appellant raises three issues for consideration on appeal: (1) whether the bankruptcy court had cause under 11 U.S.C. § 1112(b) to convert the case to Chapter 7; (2) whether the bankruptcy court's order to convert the case to Chapter 7 was in the best interests of creditors and the estate; and (3) whether the bankruptcy court gave Appellant notice pursuant to 11 U.S.C. § 1112(b) before converting the case to Chapter 7.

### A. Cause to Convert to Chapter 7

The Court affirms the bankruptcy court's finding of cause to convert the bankruptcy from Chapter 11 to Chapter 7 under 11 U.S.C. § 1112(b). Section 1112(b) permits a bankruptcy court to convert or dismiss a case for cause. "The provision lists nine examples of cause, but the list is not exhaustive." In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984). "The determination of cause under § 1112(b) is 'subject to judicial discretion under the circumstances of each case.'" Id. (quoting In the Matter of Nancant, 8 B.R. 1005, 1006 (Bankr. D. Mass. 1981)). Accordingly, a bankruptcy court may convert a case to Chapter 7 under § 1112(b) for a debtor's lack of good faith. See In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988); see also 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any

7

action or making any determination necessary or appropriate . . . to prevent an abuse of process.").

In Phoenix Piccadilly, the Eleventh Circuit considered six factors when determining whether a debtor filed a petition in bad faith. 849 F.2d at 1394. The Phoenix Piccadilly factors are:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title;

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

Id. at 1394–95.

In this case, the bankruptcy court analyzed the Phoenix Piccadilly factors at the September 8 hearing and found that each factor was present. (Dkt. 11 at 30–37) As to the first factor, the bankruptcy court noted that Appellant has one asset, the Property. (Id. at 31) This fact is established by Appellant's Chapter 11 Case Management Summary, which states, "The Debtor operates single asset real estate within the meaning of Bankruptcy Code § 101(51B)." (Dkt. 3-15 at 1). The bankruptcy court held that Appellant holds bare legal title because Scott, whose interest in the Property had

8

been foreclosed, transferred his interest to Appellant via quitclaim deed. (Dkt. 11 at 31) This Court affirms the bankruptcy court's findings on the first Phoenix Piccadilly factor.

The second Phoenix Piccadilly factor is that the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors. 849 F.2d at 1394. Appellant has two unsecured creditors whose claims total $5,182.00. (Dkt. 11 at 32) Appellee, the secured creditor with first priority, has a claim of at least $206,887.32. (Dkt. 3-42 at 5) Prescott, the secured creditor with second priority, has a claim of $100,000.00, according to Appellant's Schedule of Secured Creditors. (Dkt. 3-6 at 9; see also Dkt. 3-58 at 4) In total, Appellant has over $300,000 in secured debt, and two unsecured creditors whose claims total $5,182.00. Appellant has few unsecured creditors, and their claims are miniscule in relation to the claims of the secured creditors. The second factor is present in Appellant's case.

The third factor is that the debtor has few employees. Phoenix Piccadilly, 849 F.2d at 1394. Appellant has no employees. (Dkt. 3-15 at 3) The third factor is present.

The fourth factor is that the property is the subject of a foreclosure action due to arrearages on the debt. Phoenix Piccadilly, 849 F.2d at 1394. The Property has been the subject of a foreclosure action since 2013. (Dkt. 3-43, Ex. B at 13) The fourth factor is satisfied.

The fifth factor is that the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the

pending state court action. Phoenix Piccadilly, 849 F.2d at 1394–95. The bankruptcy court noted that the Foreclosure Action remains unresolved because there is a dispute as to Appellee's entitlement to post-judgment fees and costs in the Foreclosure Action, and that these expenses would not have accumulated without the interruptions of Appellant's bankruptcies and Scott's appeal. (Dkt. 11 at 33) At the September 8 hearing, Appellant argued that this factor could not be satisfied in this case because Appellee repeatedly canceled scheduled foreclosure sales in 2019, 2021, and 2022. (Id.) But each cancellation was a result of Appellee's attempts to amend the foreclosure judgment to include post-judgment costs before a sale was consummated. (Dkt. 3-43, Ex. B)

    This bankruptcy is Appellant's attempt to maintain ownership of the Property. Appellee seeks to enforce its right to a foreclosure sale, which was triggered by Scott's default in 2013. The state court can resolve the parties' dispute as to the Property's ownership in the still pending Foreclosure Action by entering a final decision as to Appellee's entitlement to post-judgment costs and fees and scheduling and authorizing a foreclosure sale. The state court has jurisdiction to resolve any issues posed by the Option. Therefore, the fifth Phoenix Piccadilly factor is present.

    Finally, the sixth factor is whether the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the secured creditors to enforce their rights. Phoenix Piccadilly, 849 F.2d at 1395. On March 11, 2022, the parties to the Foreclosure Action received notice of a foreclosure sale scheduled for April 14, 2022.

10

(Dkt. 3-43, Ex. B at 2) On April 11, the state court scheduled a telephonic hearing for May 2, 2022, to address Appellee's motion to amend the foreclosure judgment to include post-judgment advances and interest. (Id.) The April 14 sale was canceled on April 12. (Id.) Appellant filed the petition on April 13, 2022. (Dkt. 3-11) The bankruptcy filing by operation of law forced the state court to stay the final hearing and any subsequent sale.

This Court finds that the timing of the bankruptcy filing evinces Appellant's intent to frustrate Appellee's legitimate efforts to enforce its rights. Appellant filed its petition two days after the parties received notice that the state court had scheduled a hearing to address Appellee's motion to amend the foreclosure judgment. Although the April 14 foreclosure sale had been canceled by the time Appellant filed its petition, so no sale was imminent, the timing of Appellant's filing evinces its intent to frustrate Appellee's efforts to enforce its rights because the state court was primed to decide the issue of Appellee's post-judgment costs and fees.

Moreover, the actions of Appellant and Scott evidence an intent to avoid Appellee's sale of the Property. In 2018, on the eve of a foreclosure sale, Scott transferred an interest in the Property to Appellant, which was then in bankruptcy. (Dkt. 3-39) The bankruptcy stay prevented Appellee from selling the Property then. Next, Scott appealed the final judgment of foreclosure to the Second District Court of Appeal. (Dkt. 3-43, Ex. B at 5) Although seeking an appeal is not evidence of an intent to delay Appellee's efforts to enforce its rights, Scott's appeal did result in a delay of

Appellee's ability to sell the Property for two years. Since then, Appellee has sought to amend the final judgment so that it can recoup its expenses occasioned by Scott's appeal. In 2022, less than one month before a hearing scheduled to consider the merits of Appellee's motion to amend the final the judgment, Appellant filed for bankruptcy. (Dkt. 3-43, Ex. B at 2; Dkt. 3-11) This Court, therefore, finds that the sixth Phoenix Piccadilly factor is satisfied.

The Court affirms the bankruptcy court's finding that the Phoenix Piccadilly factors are present in this case and that Appellant filed its petition in bad faith. Accordingly, the bankruptcy court had cause to convert Appellant's case to a Chapter 7 bankruptcy under 11 U.S.C. § 1112(b). Pursuant to its authority under 11 U.S.C. § 1112(b) and § 105(a), the bankruptcy court converted the case to prevent an abuse of process.

### B. The Best Interests of the Creditors and the Estate

The Court finds that conversion of the case from Chapter 11 to Chapter 7 was in the best interests of the creditors and the estate and that the bankruptcy court's similar finding is implicit in its conclusion that Appellant's petition was filed in bad faith. A court's determination of the creditors' and the estate's best interests must be consistent with the legal priority of claims. At the time of this appeal, the only creditors of Appellant's estate were the following: Appellee, with a first-priority mortgage against the Property; (Dkt. 3-18, Ex. C at 3) Prescott, who holds a second-priority mortgage against the Property; (Dkt. 3-6 at 11; Dkt. 53 at 9–11) and two unsecured

creditors, whose claims total $5,182.00. (Dkt. 11 at 32) The bankruptcy court noted that a Chapter 7 liquidation would result in the payment of at least a portion of Appellee's claim and could result in the payment of some of Prescott's claim. (Id. at 43)

The Plan proposed by Appellant, however, called for Appellee to receive one $10,000.00 payment within five days of the effective date of the Plan followed by monthly payments of interest. (Dkt. 3-53 at 10) The Plan stipulated that Appellee's claim was $300,000.00 to reflect the additional expenses Appellee sought to have included in the foreclosure judgment in state court. (Id.) If Appellant defaulted under the Plan, Appellee would be granted relief from the stay. (Id.)

Also under the Plan, Prescott would receive a right to 2.5% interest in any development Appellant "participates in with respect to the Property". (Id.) If Appellant failed to commence development within 36 months of the Plan's effective date, Appellant would pay Prescott his claim in full on the first day of the 37th month after the Plan's effective date, plus interest at 3.5%. (Id. at 10–11) The unsecured claims would be paid in full five days after the Plan's effective date. (Id. at 11)

The Plan essentially rearranged the priority of the claims under the Bankruptcy Code. It guaranteed Prescott and the unsecured claimants full satisfaction of their claims while giving no such guarantee to the first-priority mortgagee. At the September 8 hearing, the bankruptcy court noted, "I can see no, none, nothing that is beneficial for the first mortgage lender. Nothing. I can see something for the second because

you're holding the first as a hostage . . . . So [Appellee] will not bear the risk of the speculation in investment strategy." (Dkt. 11 at 37) The bankruptcy court considered the interests of the creditors and the estate and, consistent with the law of priority of claims, found that Appellant's plan was not in the best interests of the first-priority creditor.

Appellant argues in its appellate brief that the bankruptcy court did not consider the best interests of all the creditors and the estate; rather, that the bankruptcy court only considered Appellee's best interests. (Dkt. 8 at 43–46) The best interests of the creditors and the estate must be consistent with the law of priority. The bankruptcy court did not err in determining that conversion was in the best interests of the creditors and the estate when it found that the plan was not in the best interests of the creditor with the highest priority and the largest secured claim.

### C. Notice

The Court finds that Appellant had notice and an opportunity to be heard regarding the conversion of its bankruptcy from Chapter 11 to Chapter 7. A bankruptcy court must provide a debtor notice and an opportunity to be heard before converting a case under 11 U.S.C. § 1112(b), whether on request by a party in interest or *sua sponte*. The Bankruptcy Code provides, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b). Section 105(a) of the

Code clarifies, "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Id. at § 105(a).

> Section 102(1) of the Code states that
>
> "after notice and a hearing", or a similar phrase (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but (B) authorizes an act without an actual hearing if such notice is given properly and if (i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

Id. at § 102(1). "Courts have long recognized that this standard is flexible." Baker v. Bank of America, N.A., 837 F. App'x 754, 761 (11th Cir. 2020);[3] see also In re Rosson, 545 F.3d 764, 775 (9th Cir. 2008) (citations omitted) ("The notice and a hearing definition in § 102(1) 'is flexible and sensitive to context.'"). "The essential point is that the court should give counsel a meaningful opportunity to be heard." Rosson, 545 F.3d at 775 (citations omitted). The Second Circuit Court of Appeal has held that debtors were on notice of the potential for conversion where there were a series of hearings over several months in which conversion was discussed by the creditors and

---

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited here, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

the trustee. In re Tiana Queen Motel, Inc., 749 F.2d 146, 150 (2d Cir. 1984), cert. denied, 471 U.S. 1138 (1985).

In In re Winslow, 123 B.R. 641 (D. Co. 1991), the court considered whether the debtors were given notice and a hearing related to conversion of the case. The court noted that the debtors had four opportunities to present a plan for confirmation. Id. at 645. Each time the debtors submitted a plan, the court held a hearing in which the court and the parties discussed the "deficiencies in their submissions." Id. Based on this record, the district court held that the bankruptcy court entered the conversion order in compliance with § 1112(b). Id.

The Trustee raised the potential propriety of conversion of Appellant's bankruptcy to Chapter 7 at the first hearing in the case on May 10, 2022. (Dkt. 3-24 at 8) (noting that "there's not going to be any distribution for unsecured creditors," and asking, "Why are we in Chapter 11 for this?") At a hearing on May 17, 2022, the bankruptcy court indicated it was considering dismissal or conversion to Chapter 7. (Dkt. 3-44 at 16) At a hearing on June 28, 2022, the Trustee stated, "[I]f the creditors aren't happy, then there's always conversion. And the Chapter 7 trustee will liquidate this at the drop of a hat." (Dkt. 3-60 at 39) The bankruptcy court replied in the affirmative to the Trustee's suggestion. (Id.)

At a hearing on July 14, 2022, the parties extensively discussed Appellee's Motion to Dismiss Chapter 11 Case as Bad Faith Filing, (Dkt. 3). Near the conclusion of the hearing, the Trustee stated that if confirmation of the plan did not go forward at

16

the hearing scheduled for September 8, 2022, he would ask the bankruptcy court for conversion or dismissal. (Id. at 43) The bankruptcy court told Appellant's counsel, "You've got until September 8." (Id. at 44) Fully acknowledging that he was on notice that the issue of conversion would be discussed, counsel responded, "I know." (Id.) The bankruptcy court continued the hearing on Appellee's motion to dismiss the bankruptcy case until September 8, 2022, to afford Appellant a full opportunity to prepare to present its defenses. (Id. at 48)

At the September 8, 2022, hearing, the bankruptcy court heard argument from counsel for Appellant and Appellee and from the Trustee. (Dkt. 11) Appellant's counsel presented the Plan, which was filed the day before the hearing. (Id. at 4–8) Appellee's counsel stated that the Plan did not satisfy Appellee and noted that "we're also here on our continued motion . . . to dismiss." (Id. at 9) Appellee's counsel argued in favor of dismissal. (Id. at 9–13) The Trustee echoed Appellee's counsel's arguments and requested conversion. (Id. at 17) The Trustee noted that Appellant modified the Plan to pay off the unsecured creditors in full on the Plan's effective date. (Id. at 18) It also added the provision under which, if Appellee did not approve the Plan, THPCP would exercise the Option and purchase the property for $250,000.00. (Id.) The Trustee called this provision "a threat." (Id.) The Trustee observed that Appellee's only relief if Appellant defaulted under the Plan would be stay relief. (Id. at 20) The Trustee said called the Plan "a textbook example of abuse of the bankruptcy process[.]" (Id. at 21)

17

The bankruptcy court asked Appellant's counsel to respond to the motion to dismiss and said, "Tell me why this isn't a classic Phoenix Piccadilly case or actually much worse." (Id. at 25) Appellant's counsel argued that this case is distinguishable from Phoenix Piccadilly because there is more than one mortgagee, so it is not a two-party dispute. (Id.) He also asserted that Appellant had negotiated in good faith with Appellee. (Id.)

The bankruptcy court then discussed each Phoenix Piccadilly factor. (Id. at 30–38) For the factors that were disputed, such as whether the pending state court action could resolve the dispute between the debtor and the secured creditor or whether the timing of the petition supported a finding that it was filed in bad faith, the bankruptcy court heard argument from the parties. (Id. at 34, 36) On the issue of timing, the bankruptcy court took a recess to review the record from the state court action. (Id. at 39) The court gave the parties an opportunity to try to reach a resolution. When the parties returned, the bankruptcy court heard the parties' arguments regarding the timing of the petition. (Id. at 40–42) Thereafter, the bankruptcy court converted the case from Chapter 11 to Chapter 7. (Id. at 43)

The Court finds that the bankruptcy court's notice and hearing were more than sufficient to satisfy the procedural requirements of § 1112(b). Appellant had more than sufficient notice that the bankruptcy court was considering converting the case to Chapter 7 and, in fact, was heard on the issue.

## IV. CONCLUSION

Accordingly, the Court hereby **ORDERS** that the final judgment issued in the bankruptcy action is **AFFIRMED**. The Clerk is directed to terminate all pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 1st day of February 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of record
Any pro se party